## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| LUIS ORTIZ FIGUEROA, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>COVE RISK SERVICES, LLC,<br><br>Defendant. | Case No.<br><br>**JURY TRIAL DEMANDED** |

## CLASS ACTION COMPLAINT

Plaintiff, Luis Ortiz Figueroa ("Plaintiff"), on behalf of himself and all others similarly situated, states as follows for his class action complaint against Defendant, Cove Risk Services, LLC ("Cove Risk" or "Defendant"):

## INTRODUCTION

1.      On or around May 3, 2025, Cove Risk, an administrator of insurance groups headquartered in Braintree, Massachusetts, lost control over its computer network and the highly sensitive personal information stored on its computer network in a data breach perpetrated by cybercriminals ("Data Breach"). Upon information and belief, the Data Breach has impacted at least 49,385 individuals.[1]

2.      Even though the Data Breach occurred around May 3, 2025, Defendant did not become aware of the Breach until May 5, 2025, allowing cybercriminals unfettered access to its systems for over two days.

---

[1] *See Data Breach Notifications,* MAINE OFFICE OF THE ATT'Y GEN. https://www.maine.gov/agviewer/content/ag/985235c7-cb95-4be2-8792-a1252b4f8318/496931f2-2208-4e47-8937-edf6e09cd074.html (last visited Dec. 30, 2025).

3.      Following an internal investigation, Defendant learned cybercriminals had gained unauthorized access to the personally identifiable information ("PII") and protected health information ("PHI") (collectively "Private Information") of the insured individuals in its care, including but not limited to names, date of birth, driver's license/state issued identification numbers, health insurance information, medical information, financial account information, passport numbers, taxpayer ID numbers, payment card information, and/or Social Security numbers.

4.      On or around December 12, 2025–over six months after the Data Breach occurred– Cove Risk finally began notifying Class Members about the Data Breach ("Breach Notice"). A letter Defendant provided to the New Hampshire Attorney General's Office about the Data Breach containing a sample Breach Notice is attached as Exhibit A.

5.      Upon information and belief, cybercriminals were able to breach Defendant's systems because Defendant failed to adequately train its employees on cybersecurity, failed to adequately monitor its agents, contractors, vendors, and suppliers in handing and securing the Private Information of Plaintiff, and failed to maintain reasonable security safeguards or protocols to protect the Class's Private Information—rendering it an easy target for cybercriminals.

6.      Defendant's failure to timely report the Data Breach made the victims vulnerable to identity theft without any warnings to monitor their financial accounts or credit reports to prevent unauthorized use of their Private Information.

7.      Defendant knew or should have known that each victim of the Data Breach deserved prompt and efficient notice of the Data Breach and assistance in mitigating the effects of misuse of their data. In failing to adequately protect the Private Information in its care, adequately

notify victims about the breach, and obfuscating the nature of the breach, Defendant violated state law and harmed an unknown number of its current and former employees.

8.    Plaintiff and the Class are victims of Defendant's negligence and inadequate cyber security measures. Specifically, Plaintiff and members of the proposed Class trusted Defendant with their Private Information. But Defendant betrayed that trust. Defendant failed to properly use up-to-date security practices to prevent the Data Breach.

9.    Plaintiff received Defendant's breach notice and is a Data Breach victim.

10.    The exposure of one's PII and PHI to cybercriminals is a bell that cannot be unrung. Before the Data Breach, the private information of Plaintiff and the Class was exactly that— private. Not anymore. Now, their private information is permanently exposed and unsecure.

## PARTIES

11.    Plaintiff Luis Ortiz Figueroa is a natural person and citizen of New Hampshire, where he intends to remain.

12.    Defendant, Cove Risk Services, LLC, is a Massachusetts domestic limited liability company with its headquarters and principal place of business at 35 Braintree Hill Office Park, Suite 206, Braintree, MA 02184.

## JURISDICTION & VENUE

13.    This Court has subject matter jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2). The amount in controversy exceeds $5 million, exclusive of interest and costs. There are over 100 putative Class Members, and Plaintiff and Defendant are citizens of different states.

14.    This Court has personal jurisdiction over Defendant because Defendant maintains its principal place of business in Massachusetts and regularly conducts business in Massachusetts.

15.     Venue is proper in this Court under because Defendant's principal office is in this District, and because a substantial part of the events, acts, and omissions giving rise to Plaintiff' claims occurred in this District.

## FACTUAL ALLEGATIONS

*Cove Risk*

16.     Cove Risk is an administrator for six self-insurance groups that provide workers' compensation coverage to more than 4,000 businesses throughout Massachusetts and New Hampshire.[2] According to Defendant it serves "progressive, safety-conscious businesses and our track record is second to none. We're proud of what our customers have to say.[3]

17.     On information and belief, Cove Risk accumulates the highly sensitive Private Information of claimants covered by its broker clients' insurance plans.

18.     In collecting and maintaining the Private Information, Defendant agreed it would safeguard the data in accordance with state law and federal law. After all, Plaintiff and Class Members themselves took reasonable steps to secure their Private Information.

19.     Cove Risk understood the need to protect the Private Information in its network and prioritize its data security. Indeed, Cove Risk states in its Privacy Statement[4] that:

    a.    "Cove Risk Services, LLC is committed to maintaining the privacy of your information;"

    b.    "[e]xcept for required communications to employers, and to our authorized employees, investigators, attorneys and other agents, Cove Risk Services does not disclose, give, sell or transfer any personal information about our

---

[2] *About Cove Risk Services,* COVE RISK, https://www.coverisk.com/about/ (last visited Dec. 30, 2025).
[3] *Id*.
[4] *Privacy Statement*, COVE RISK, https://www.coverisk.com/privacy/ (last visited Dec. 30, 2025).

visitors or claimants under any participating self-insurance programs, unless consented to by the claimant;"

c. "To ensure that our privacy mandates are met by Cove Risk Services employees, all Cove Risk Services employees are versed in the importance of privacy in all aspects of their work. Cove Risk Services complies with select industry standards for protecting Internet users' privacy. Cove Risk Services internally reviews our compliance with these standards on a periodic basis.."[5]

20.     Despite recognizing its duty to do so, on information and belief, Cove Risk has not implemented reasonably cybersecurity safeguards or policies to protect the Private Information stored on its network or trained its IT or data security employees to prevent, detect, and stop breaches of its systems. As a result, Cove Risk leaves significant vulnerabilities in its systems for cybercriminals to exploit and gain access to claimants' PII.

***Cove Risk Fails to Safeguard Claimants' Private Information***

21.     Plaintiff is a claimant of his employer, Traegal Dugan's, workers compensation insurance plan.

22.     As a condition of participating in the insurance plan, Plaintiff provided Defendant with his Private Information, including but not limited to his name, date of birth, and Social Security number. Defendant used that Private Information to facilitate its business of administering insurance plans and required Plaintiff to provide that Private Information.

23.     On information and belief, Cove Risk collects and maintains claimants' unencrypted Private Information in its computer systems.

---

[5] *Id.*

24.    In collecting and maintaining Private Information, Defendant implicitly agreed that it will safeguard the data using reasonable means according to state and federal law.

25.    According to Defendant's Breach Notice, Defendant admits that "[o]n May 5, 2025, Cove Risk Services experienced a network disruption that affected [its] ability to access certain systems."[6]

26.    Defendant conducted an investigation, which revealed that "certain information within its systems was subject to unauthorized access or *acquisition* on or around May 3, 2025."[7] Thus, cybercriminals had unfettered access to claimants' most sensitive information for at least two days before detection.[8]

27.    In other words, the Data Breach investigation revealed Defendant's cyber and data security systems were completely inadequate and allowed cybercriminals to break into its network and steal files containing a treasure trove of thousands of its clients' claimants' highly private information.

28.    Through its inadequate security practices, Defendant exposed Plaintiff's and the Class's Private Information for theft and sale on the dark web.

29.    On or about December 12, 2025– more than six months after the Data Breach occurred– Cove Risk finally began notifying some Class Members about the Data Breach.

30.    Plaintiff, however, did not receive notice from Defendant until on or about December 29, 2025.

---

[6] Ex. A.
[7] *Id*.
[8] *Id*.

31.    Despite its duties to safeguard Private Information, Defendant did not in fact follow industry standard practices in securing claimants' Private Information, as evidenced by the Data Breach.

32.    In response to the Data Breach, Cove Risk contends that it "further enhance[d] the security of our network to prevent similar incidents from occurring in the future."[9] Defendant not only fails to expand on what these "enhancements" entail but also fails to identify what actual steps or actions, if any, have been taken as a result of the Data Breach. Further, such steps or actions and any additional security enhancements made because of its review should have been in place before the Data Breach.

33.    Further, Defendant recognized the actual imminent harm and injury that flowed from the Data Breach, encouraging breach victims to "remain vigilant against incidents of identity theft and fraud by reviewing your credit reports and account statements for suspicious activity and to detect errors."[10]

34.    Cove Risk has offered complimentary credit monitoring services to victims, which does not adequately address the lifelong harm that victims will face following the Data Breach. Indeed, the breach involves Private Information that cannot be changed, such as Social Security numbers and certain financial account information.

35.    Even with several months of credit monitoring services, the risk of identity theft and unauthorized use of Plaintiff' and Class Members' Private Information is still substantially high. The fraudulent activity resulting from the Data Breach may not come to light for years.

---

[9] Ex. A.
[10] *Id.*

36.     Defendant's statement that it "experienced a network disruption that affected [its] ability to access certain systems"[11] indicates that Defendant experienced a ransomware attack.

37.     According to the United States Cybersecurity and Infrastructure Security Agency ("CISA"), ransomware is a form of malware designed to encrypt files on a device, rendering any files and the systems that rely on them unusable.[12] Thereafter, the cybercriminals demand a ransom payment in exchange for decryption, often threatening to sell or leak exfiltrated data if the ransom is not paid.[13]

38.     Defendant has made no public statements regarding whether it experienced a ransomware attack or whether it made a ransom payment.

39.     However, even if Defendant made a ransom payment, there is no guarantee that the Private Information stolen in the Data Breach will be deleted.[14]  The stolen Private Information is valuable, and can easily be sold to another threat actor, so there is little incentive to delete it.[15]

40.     Thus, on information and belief, Plaintiff's and the Class's stolen Private Information has already been published—or will be published imminently—by cybercriminals on the dark web.

41.     And as the Harvard Business Review notes, such "[c]ybercriminals frequently use the Dark Web—a hub of criminal and illicit activity—to sell data from companies that they have gained unauthorized access to through credential stuffing attacks, phishing attacks, [or] hacking."[16]

---

[11] Ex. A
[12] *Ransomware 101*, CISA, https://www.cisa.gov/stopransomware/ransomware-101 (last visited Aug. 22, 2025).
[13] *Id.*
[14] Steve Adler, *Majority of Ransomware Victims That Pay a Ransom Suffer a Second Attack*, THE HIPAA JOURNAL (Feb. 23, 2024), https://www.hipaajournal.com/majority-of-ransomware-victims-that-pay-a-ransom-suffer-a-second-attack/.
[15] *Id.*
[16] Brenda R. Sharton, *Your Company's Data Is for Sale on the Dark Web. Should You Buy It Back?*, HARVARD BUS. REV. (Jan. 4, 2023) https://hbr.org/2023/01/your-companys-data-is-for-sale-on-the-dark-web-should-you-buy-it-back.

42.     Defendant failed its duties when its inadequate security practices caused the Data Breach. In other words, Defendant's negligence is evidenced by its failure to prevent the Data Breach and stop cybercriminals from accessing the Private Information. And thus, Defendant caused widespread injury and monetary damages.

***The Data Breach was a Foreseeable Risk of Which Defendant was on Notice***

43.     It is well known that Private Information, including names, social security numbers, and financial account information numbers, is an invaluable commodity and a frequent target of hackers.

44.     In 2024, there were 3,158 data breaches with 1,350,835,988 victim notices, a 211% increase year over year.[17] The 330 reported breaches reported in 2021 exposed nearly 30 million sensitive records (28,045,658), compared to only 306 breaches that exposed nearly 10 million sensitive records (9,700,238) in 2020.[18]

45.     In October 2019, the Federal Bureau of Investigation published online an article titled "High-Impact Ransomware Attacks Threaten U.S. Businesses and Organizations" that, *inter alia*, warned the public that "Ransomware attacks are becoming more targeted, sophisticated, and costly" and "the losses from ransomware attacks have increased significantly."[19] The FBI further advised "[t]he time to invest in backups and other cyber defenses is before an attacker strikes, not afterward when it may be too late."[20]

46.     In April 2020, ZDNet reported, in an article titled "Ransomware mentioned in 1,000+ SEC filings over the past year," that "[r]ansomware gangs are now ferociously aggressive

---

[17] *2024 Data Breach Report* at 6, IDENTITY THEFT RESOURCE CENTER (Jan. 2025), https://www.idtheftcenter.org/wp-content/uploads/2025/02/ITRC_2024DataBreachReport.pdf.
[18] *Id.*
[19] *High-Impact Ransomware Attacks Threaten U.S. Businesses and Organizations*, FBI (Oct. 2, 2019), https://www.ic3.gov/PSA/2019/psa191002.
[20] *Id.*

in their pursuit of big companies. [21] They breach networks, use specialized tools to maximize damage, leak corporate information on dark web portals, and even tip journalists to generate negative news for companies as revenge against those who refuse to pay."[22]

47.     In September 2020, the United States Cybersecurity and Infrastructure Security Agency published online a "Ransomware Guide" advising that "[m]alicious actors have adjusted their ransomware tactics over time to include pressuring victims for payment by threatening to release stolen data if they refuse to pay and publicly naming and shaming victims as secondary forms of extortion."[23]

48.     Indeed, cyberattacks have become so notorious that the Federal Bureau of Investigation ("FBI") and U.S. Secret Service issue warnings to potential targets, so they are aware of, and prepared for, a potential attack. As one report explained, "[e]ntities like smaller municipalities and hospitals are attractive to ransomware criminals . . . because they often have lesser IT defenses and a high incentive to regain access to their data quickly."[24]

49.     This readily available and accessible information confirms that, prior to the Data Breach, Defendant knew or should have known that (i) ransomware actors were targeting entities such as Defendant, (ii) ransomware gangs were ferociously aggressive in their pursuit of entities such as Defendant, (iii) ransomware gangs were leaking corporate information on dark web portals, and (iv) ransomware tactics included threatening to release stolen data.

50.     In light of the information readily available and accessible on the internet before

---

[21] Catalin Cimpanu, *Ransomware mentioned in 1,000+ SEC filings over the past year*, ZDNET (Apr. 30, 2020), https://www.zdnet.com/article/ransomware-mentioned-in-1000-sec-filings-over-the-past-year/.
[22] *Id.*
[23] *#StopRansomware Guide*, CISA, https://www.cisa.gov/stopransomware/ransomware-guide (last visited Oct. 22, 2025).
[24] Ben Kochman, *FBI, Secret Service Warn of Targeted Ransomware*, LAW360 (Nov. 18, 2019), https://www.law360.com/articles/1220974/fbi-secret-service-warn-of-targeted-ransomware.

the Data Breach, Defendant, having elected to store the unencrypted Private Information of thousands of its current and former employees in an Internet-accessible environment, had reason to be on guard for the exfiltration of the Private Information and Defendant's type of business had cause to be particularly on guard against such an attack.

51.     Before the Data Breach, Defendant knew or should have known that there was a foreseeable risk that Plaintiff' and Class Members' Private Information could be accessed, exfiltrated, and published as the result of a cyberattack. Notably, data breaches are prevalent in today's society therefore making the risk of experiencing a data breach entirely foreseeable to Defendant.

52.     Prior to the Data Breach, Defendant knew or should have known that it should have encrypted claimants' names, Social Security numbers, medical information, financial account information, and other sensitive data elements within its network to protect against its publication and misuse in the event of a cyberattack.

***Plaintiff's Experiences and Injuries***

53.     Plaintiff Luis Ortiz Figueroa is a claimant on his employers' workers' compensation insurance plan, which, on information and belief, is a client of Defendant.

54.     Plaintiff received Defendant's Breach Notice.

55.     As a condition of participating in the worker's compensation insurance plan, Cove Risk required Plaintiff to provide his Private Information, including at least his name, date of birth and Social Security number.

56.     Plaintiff (or his third-party agent) provided his Private Information to Cove Risk and trusted that the company would use reasonable measures to protect it according to state and federal law.

57.     Defendant deprived Plaintiff of the earliest opportunity to guard himself against the Data Breach's effects by failing to notify him about the Breach for six months.

58.     As a result of its inadequate cybersecurity, Defendant exposed Plaintiff's Private Information for theft by cybercriminals and sale on the dark web.

59.     Plaintiff does not recall ever learning that his Private Information was compromised in another data breach incident, other than the Data Breach at issue here.

60.     Plaintiff suffered actual injury in the form of damages to and diminution in the value of his Private Information. After all, Private Information is a form of intangible property— property that Defendant was required to adequately protect.

61.     As a result of the Data Breach, Plaintiff has spent time and made reasonable efforts to mitigate the impact of the Data Breach, including but not limited to researching the Data Breach, reviewing credit card and financial account statements, and monitoring his credit information.

62.     Plaintiff has already spent and will continue to spend considerable time and effort monitoring his accounts to protect himself from identity theft.

63.     Once an individual's Private Information is for sale and access on the dark web, as Plaintiff's Private Information is here as a result of the Data Breach, cybercriminals are able to use the stolen and compromised to gather and steal even more information. On information and belief, the spam calls and texts Plaintiff is experiencing are a result of the Data Breach.

64.     Plaintiff fears for his personal financial security and uncertainty over what Private Information was exposed in the Data Breach. Plaintiff has and is experiencing feelings of anxiety, sleep disruption, stress, fear, and frustration because of the Data Breach. Plaintiff is experiencing anxiety, distress, and fear regarding how this Data Breach, including the exposure and loss of his Social Security number, will impact his ability to do so. This goes far beyond allegations of mere

worry or inconvenience; it is exactly the sort of injury and harm to a Data Breach victim that the law contemplates and addresses.

65.    Plaintiff is now subject to the present and continuing risk of fraud, identity theft, and misuse resulting from his Private Information being placed in the hands of unauthorized third parties. This injury was worsened by Defendant's failure to inform Plaintiff about the Data Breach in a timely fashion.

66.    Plaintiff has a continuing interest in ensuring that his Private Information, which, upon information and belief, remains backed up in Defendant's possession, is protected and safeguarded from future breaches.

***Plaintiff and the Proposed Class Face Significant Risk of Continued Identity Theft***

67.    Plaintiff and members of the proposed Class have suffered injury from the misuse of their Private Information that can be directly traced to Defendant.

68.    As a result of Cove Risk's failure to prevent the Data Breach, Plaintiff and the proposed Class have suffered and will continue to suffer damages, including monetary losses, lost time, anxiety, and emotional distress. Plaintiff and the class have suffered or are at an increased risk of suffering: loss of the opportunity to control how their Private Information is used;

a.    The loss of the opportunity to control how their Private Information is used;

b.    diminution in value of their Private Information;

c.    compromise and continuing publication of their Private Information;

d.    out-of-pocket costs from trying to prevent, detect, and recovery from identity theft and fraud;

> e.    lost opportunity costs and wages from spending time trying to mitigate the fallout of the Data Breach by, *inter alia*, preventing, detecting, contesting, and recovering from identify theft and fraud;
>
> f.    delay in receipt of tax refund monies;
>
> g.    unauthorized use of their stolen Private Information; and
>
> h.    continued risk to their Private Information—which remains in Defendant's possession—and is thus as risk for futures breaches so long as Defendant fails to take appropriate measures to protect the Private Information.

69.    Stolen Private Information is one of the most valuable commodities on the criminal information black market. According to Experian, a credit-monitoring service, stolen Private Information can be worth up to $1,000.00 depending on the type of information obtained.

70.    The value of Plaintiff and Class's Private Information on the black market is considerable. Stolen Private Information trades on the black market for years. And criminals frequently post and sell stolen information openly and directly on the "dark web"—further exposing the information.

71.    Social Security numbers are particularly attractive targets for hackers because they can easily be used to perpetrate identity theft and other highly profitable types of fraud. Moreover, Social Security numbers are difficult to replace, as victims are unable to obtain a new number until the damage is done.

72.    It can take victims years to spot identity or Private Information theft, giving criminals plenty of time to use that information for cash.

73.    One way that criminals profit from stolen Private Information is by creating comprehensive dossiers on individuals called "Fullz" packages. These dossiers are both

shockingly accurate and comprehensive. Criminals create them by cross-referencing and combining two sources of data—first the stolen Private Information, and second, unregulated data found elsewhere on the internet (like phone numbers, emails, addresses, etc.).

74.     The development of "Fullz" packages means that stolen Private Information from the Data Breach can easily be used to link and identify it to Plaintiff' and the Class's phone numbers, email addresses, and other unregulated sources and identifiers. In other words, even if certain information such as emails, phone numbers, or credit card numbers may not be included in the Private Information stolen by the cyber-criminals in the Data Breach, criminals can easily create a Fullz package and sell it at a higher price to unscrupulous operators and criminals (such as illegal and scam telemarketers) over and over. That is exactly what is happening to Plaintiff and the Class, and it is reasonable for any trier of fact, including this Court or a jury, to find that Plaintiff' and members of the Class's stolen Private Information is being misused, and that such misuse is fairly traceable to the Data Breach.

75.     Defendant disclosed the Private Information of Plaintiff and Class Members for criminals to use in the conduct of criminal activity. Specifically, Defendant opened up, disclosed, and exposed the Private Information of Plaintiff and Class Members to people engaged in disruptive and unlawful business practices and tactics, including online account hacking, unauthorized use of financial accounts, and fraudulent attempts to open unauthorized financial accounts (i.e., identity fraud), all using the stolen Private Information.

76.     Defendant's failure to promptly and properly notify Plaintiff and Class Members of the Data Breach exacerbated Plaintiff and Class Members' injury by depriving them of the earliest ability to take appropriate measures to protect their Private Information and take other necessary steps to mitigate the harm caused by the Data Breach.

*Consumers Prioritize Data Security*

77.     In 2024, the technology and communications conglomerate Cisco published the results of its multi-year "Consumer Privacy Survey."[25] Therein, Cisco reported the following:

    a.      "For the past six years, Cisco has been tracking consumer trends across the privacy landscape. During this period, privacy has evolved from relative obscurity to a customer requirement with more than 75% of consumer respondents saying they won't purchase from an organization they don't trust with their data."[26]

    b.      "Privacy has become a critical element and enabler of customer trust, with 94% of organizations saying their customers would not buy from them if they did not protect data properly."[27]

    c.      89% of consumers stated that "I care about data privacy."[28]

    d.      83% of consumers declared that "I am willing to spend time and money to protect data" and that "I expect to pay more" for privacy.[29]

    e.      51% of consumers revealed that "I have switched companies or providers over their data policies or data-sharing practices."[30]

    f.      75% of consumers stated that "I will not purchase from organizations I don't trust with my data."[31]

---

[25] *Privacy Awareness: Consumers Taking Charge to Protect Personal*, Cisco, https://www.cisco.com/c/dam/en_us/about/doing_business/trust-center/docs/cisco-consumer-privacy-report-2024.pdf (last visited Oct. 22, 2025).
[26] *Id*. at 3.
[27] *Id*.
[28] *Id*. at 9.
[29] *Id*.
[30] *Id*.
[31] *Id*. at 11.

78.    Defendant knew or should have known that adequate implementation of cybersecurity and protection of Private Information, including Plaintiff' and the Class's Private Information, was important to its members.

***Defendant Failed to Follow FTC Guidelines***

79.    According to the Federal Trade Commission ("FTC"), the need for data security should be factored into all business decision-making.  Thus, the FTC issued numerous guidelines identifying best data security practices that businesses—like Defendant—should use to protect against unlawful data exposure.

80.    In 2016, the FTC updated its publication, *Protecting Personal Information: A Guide for Business*. There, the FTC set guidelines for what data security principles and practices businesses must use.[32]  The FTC declared that, *inter alia*, businesses must:

a.    protect the personal customer information that they keep;

b.    properly dispose of personal information that is no longer needed;

c.    encrypt information stored on computer networks;

d.    understand their network's vulnerabilities; and

e.    implement policies to correct security problems.

81.    The guidelines also recommend that businesses watch for the transmission of large amounts of data out of the system—and then have a response plan ready for such a breach.

82.    Furthermore, the FTC explains that companies must:

a.    not maintain information longer than is needed to authorize a transaction;

b.    limit access to sensitive data;

c.    require complex passwords to be used on networks;

---

[32] *Protecting Personal Information: A Guide for Business,* FED TRADE COMMISSION (Oct. 2016) https://www.ftc.gov/system/files/documents/plain-language/pdf-0136_proteting-personal-information.pdf.

      d.     use industry-tested methods for security;

      e.     monitor for suspicious activity on the network; and

      f.     verify that third-party service providers use reasonable security measures.

83.    The FTC brings enforcement actions against businesses for failing to protect customer data adequately and reasonably. Thus, the FTC treats the failure—to use reasonable and appropriate measures to protect against unauthorized access to confidential consumer data—as an unfair act or practice prohibited by Section 5 of the Federal Trade Commission Act ("FTCA"), 15 U.S.C. § 45. Orders resulting from these actions further clarify the measures businesses must take to meet their data security obligations.

84.    In short, Defendant's failure to use reasonable and appropriate measures to protect against unauthorized access to its current and former members' data constitutes an unfair act or practice prohibited by Section 5 of the FTCA, 15 U.S.C. § 45.

***Defendant Failed to Follow Industry Standards***

85.    Several best practices have been identified that—at a *minimum*—should be implemented by businesses like Defendant. These industry standards include: educating all employees; strong passwords; multi-layer security, including firewalls, anti-virus, and anti-malware software; encryption (making data unreadable without a key); multi-factor authentication; backup data; and limiting which employees can access sensitive data.

86.    Other industry standard best practices include: installing appropriate malware detection software; monitoring and limiting the network ports; protecting web browsers and email management systems; setting up network systems such as firewalls, switches, and routers; monitoring and protection of physical security systems; protection against any possible communication system; and training staff regarding critical points.

87.     Upon information and belief, Defendant failed to implement industry-standard cybersecurity measures, including failing to meet the minimum standards of both the NIST Cybersecurity Framework Version 2.0 (including without limitation PR.AA-01, PR.AA.-02, PR.AA-03, PR.AA-04, PR.AA-05, PR.AT-01, PR.DS-01, PR-DS-02, PR.DS-10, PR.PS-01, PR.PS-02, PR.PS-05, PR.IR-01, DE.CM-01, DE.CM-03, DE.CM-06, DE.CM-09, and RS.CO-04).

88.     These foregoing frameworks are existing and applicable industry standards for an employer's obligations to provide adequate data security for its members. Upon information and belief, Defendant failed to comply with at least one—or all—of these accepted standards, thereby opening the door to the threat actor and causing the Data Breach.

## CLASS ACTION ALLEGATIONS

187.     Plaintiff brings this action pursuant to Rule 23(b)(2), 23(b)(3), and 23(c)(4) of the Federal Rules of Civil Procedure.

188.     Plaintiff sues on behalf of themselves and the proposed Class ("Class"), defined as follows:

> **All individuals residing in the United States whose Private Information was compromised in Defendant Cove Risk's Data Breach, discovered in May 2025, including all those who received notice of the breach.**

189.     Excluded from the Class are Defendant, its agents, affiliates, parents, subsidiaries, any entity in which Defendant has a controlling interest, any Defendant officer or director, any successor or assign, and any Judge who adjudicates this case, including their staff and immediate family.

190.     Plaintiff reserves the right to amend the class definition.

191.     This action satisfies the numerosity, commonality, typicality, and adequacy requirements under Fed. R. Civ. P. 23.

192.    **Numerosity**. Plaintiff's claims are representative of the proposed Class, consisting of at least 49,385 individuals, far too many to join in a single action;

193.    **Ascertainability**. Class members are readily identifiable from information in Defendant's possession, custody, and control;

194.    **Typicality.** Plaintiff's claims are typical of Class member's claims as each arises from the same Data Breach, the same alleged violations by Defendant, and the same unreasonable manner of notifying individuals about the Data Breach.

195.    **Adequacy.** Plaintiff will fairly and adequately protect the proposed Class's interests. His interests do not conflict with Class members' interests, and Plaintiff has retained counsel experienced in complex class action litigation and data privacy to prosecute this action on the Class's behalf, including as lead counsel.

196.    **Commonality.** Plaintiff's and the Class's claims raise predominantly common fact and legal questions that a class wide proceeding can answer for all Class members. Indeed, it will be necessary to answer the following questions:

    a.  Whether Defendant had a duty to use reasonable care in safeguarding Plaintiff's and the Class's Private Information;

    b.  Whether Defendant failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the information compromised in the Data Breach;

    c.  Whether Defendant was negligent in maintaining, protecting, and securing Private Information;

    d.  Whether Defendant breached contract promises to safeguard Plaintiff and the Class's Private Information;

    e.   Whether Defendant took reasonable measures to determine the extent of the Data Breach after discovering it;

    f.   Whether Defendant's Breach Notice was reasonable;

    g.   Whether the Data Breach caused Plaintiff's and the Class's injuries;

    h.   What the proper damages measure is; and

    i.   Whether Plaintiff and the Class are entitled to damages, treble damages, or injunctive relief.

197.    **Appropriateness**. The likelihood that individual members of the Class will prosecute separate actions is remote due to the time and expense necessary to prosecute an individual case. Plaintiff is not aware of any litigation concerning this controversy already commenced by others who meet the criteria for class membership described above.

198.    Further, common questions of law and fact predominate over any individualized questions, and a class action is superior to individual litigation or any other available method to fairly and efficiently adjudicate the controversy. The damages available to individual Plaintiff are insufficient to make individual lawsuits economically feasible.

### FIRST CLAIM FOR RELIEF
**Negligence**
**(On Behalf of Plaintiff and the Class)**

199.    Plaintiff incorporates all previous paragraphs as if fully set forth herein.

200.    Plaintiff and the Class entrusted their Private Information to Defendant on the premise and with the understanding that Defendant would safeguard their Private Information, use their Private Information for business purposes only, and/or not disclose their Private Information to unauthorized third parties.

201.    Defendant owed a duty of care to Plaintiff and Class Members because it was foreseeable that Defendant's failure—to use adequate data security in accordance with industry standards for data security—would compromise their Private Information in a data breach.

202.    Defendant has full knowledge of the sensitivity of the Private Information and the types of harm that Plaintiff and the Class could and would suffer if their Private Information was wrongfully disclosed.

203.    Defendant owed these duties to Plaintiff and Class Members because they are members of a well-defined, foreseeable, and probable class of individuals whom Defendant knew or should have known would suffer injury-in-fact from Defendant's inadequate security practices.

204.    After all, Defendant actively sought and obtained Plaintiff' and Class Members' Private Information.

205.    Defendant owed—to Plaintiff and Class Members—at least the following duties to:

a.    exercise reasonable care in handling and using the Private Information in its care and

custody;

b.    implement industry-standard security procedures sufficient to reasonably protect the information from a data breach, theft, and unauthorized;

c.    promptly detect attempts at unauthorized access; and

d.    notify Plaintiff and Class members within a reasonable timeframe of any breach to the security of their Private Information.

206.    Also, Defendant owed a duty to timely and accurately disclose to Plaintiff and Class Members the scope, nature, and occurrence of the Data Breach. After all, this duty is required and necessary for Plaintiff and Class Members to take appropriate measures to protect their Private

Information, to be vigilant in the face of an increased risk of harm, and to take other necessary steps to mitigate the harm caused by the Data Breach.

207.    Defendant also had a duty to exercise appropriate clearinghouse practices to remove Private Information it was no longer required to retain under applicable regulations.

208.    Defendant knew or reasonably should have known that the failure to exercise due care in the collecting, storing, and using of the Private Information of Plaintiff and the Class involved an unreasonable risk of harm to Plaintiff and the Class, even if the harm occurred through the criminal acts of a third party.

209.    Defendant's duty to use reasonable security measures arose because of the special relationship that existed between Defendant and Plaintiff and the Class. That special relationship arose because Plaintiff and the Class entrusted Defendant with their confidential Private Information, a necessary part of doing business with Defendant.

210.    The risk that unauthorized persons would attempt to gain access to the Private Information and misuse it was foreseeable. Given that Defendant holds vast amounts of Private Information, it was inevitable that unauthorized individuals would attempt to access Defendant's databases containing the Private Information —whether by malware or otherwise.

211.    Private Information is highly valuable, and Defendant knew, or should have known, the risk in obtaining, using, handling, emailing, and storing the Private Information of Plaintiff's and Class Members' and the importance of exercising reasonable care in handling it.

212.    Defendant improperly and inadequately safeguarded the Private Information of Plaintiff and the Class in deviation of standard industry rules, regulations, and practices at the time of the Data Breach.

213.    Defendant breached these duties as evidenced by the Data Breach.

214. Defendant acted with wanton and reckless disregard for the security and confidentiality of Plaintiff' and Class Members' Private Information by:

   a.   disclosing and providing access to this information to third parties and

   b.   failing to properly supervise both the way the Private Information was stored, used, and exchanged, and those in its employ who were responsible for making that happen.

215. Defendant breached its duties by failing to exercise reasonable care in supervising its agents, contractors, vendors, and suppliers, and in handling and securing the Private Information of Plaintiff and Class Members which actually and proximately caused the Data Breach and Plaintiff' and Class Members' injury.

216. Defendant further breached its duties by failing to provide reasonably timely notice of the Data Breach to Plaintiff and Class Members, which actually and proximately caused and exacerbated the harm from the Data Breach and Plaintiff' and Class Members' injuries-in-fact.

217. Defendant has admitted that the Private Information of Plaintiff and the Class was wrongfully lost and disclosed to unauthorized third persons because of the Data Breach.

218. As a direct and traceable result of Defendant's negligence and/or negligent supervision, Plaintiff and Class Members have suffered or will suffer damages, including monetary damages, increased risk of future harm, embarrassment, humiliation, frustration, and emotional distress.

219. Defendant's breach of its common-law duties to exercise reasonable care and its failures and negligence actually and proximately caused Plaintiff and Class Members actual, tangible, injury-in-fact and damages, including, without limitation, the theft of their Private Information by criminals, improper disclosure of their Private Information, lost benefit of their

bargain, lost value of their Private Information, the use of their Private Information to attempt fraudulent transactions (Plaintiff Morton) and lost time and money incurred to mitigate and remediate the effects of the Data Breach that resulted from and were caused by Defendant's negligence, which injury-in-fact and damages are ongoing, imminent, immediate, and which they continue to face.

### SECOND CLAIM FOR RELIEF
**Negligence *Per Se***
**(On Behalf of Plaintiff and the Class)**

220.    Plaintiff incorporates by reference all other paragraphs as if fully set forth herein.

221.    Under the FTC Act, 15 U.S.C. § 45, Defendant had a duty to use fair and adequate computer systems and data security practices to safeguard Plaintiff' and Class Members' Private Information.

222.    Section 5 of the FTC Act prohibits "unfair . . . practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair act or practice by businesses, such as Defendant, of failing to use reasonable measures to protect the Private Information entrusted to it. The FTC publications and orders promulgated pursuant to the FTC Act also form part of the basis of

223.    Defendant's duty to protect Plaintiff's and the Class Members' sensitive Private Information.

224.    Defendant breached its respective duties to Plaintiff and Class Members under the FTC Act by failing to provide fair, reasonable, or adequate computer systems and data security practices to safeguard Private Information.

225.    Defendant violated its duty under Section 5 of the FTC Act by failing to use reasonable measures to protect Private Information and not complying with applicable industry

standards as described in detail herein. Defendant's conduct was particularly unreasonable given the nature and amount of Private Information Defendant had collected and stored and the foreseeable consequences of a data breach, including, specifically, the immense damages that would result to individuals in the event of a breach, which ultimately came to pass.

226.    The harm that has occurred is the type of harm the FTC Act is intended to guard against. Indeed, the FTC has pursued numerous enforcement actions against businesses that, because of their failure to employ reasonable data security measures and avoid unfair and deceptive practices, caused the same harm as that suffered by Plaintiff and members of the Class.

227.    But for Defendant's wrongful and negligent breach of its duties owed, Plaintiff and Class Members would not have been injured.

228.    The injury and harm suffered by Plaintiff and Class Members was the reasonably foreseeable result of Defendant's breach of their duties. Defendant knew or should have known that Defendant was failing to meet its duties and that its breach would cause Plaintiff and members of the Class to suffer the foreseeable harms associated with the exposure of their Private Information.

229.    Defendant's violations and its failure to comply with applicable laws and regulations constitutes negligence *per se*.

230.    As a direct and proximate result of Defendant's negligence per se, Plaintiff and

231.    Class Members have suffered and will continue to suffer numerous injuries (as detailed supra).

**THIRD CLAIM FOR RELIEF**
**Breach of Implied Contract**
**(On Behalf of Plaintiff and the Class)**

187.    Plaintiff incorporates all previous paragraphs as if fully set forth herein.

188.    Defendant required Plaintiff and members of the Class (or their third-party agents) to provide Defendant with their Private Information as a condition of participating in the insurance plans administered by Defendant.

189.    In turn, Defendant agreed it would not disclose the Private Information it collects to unauthorized persons. Defendant also promised to safeguard claimants' Private Information.

190.    Plaintiff and the members of the Class (or their third-party agents) accepted Defendant's offer by providing Private Information to Defendant in exchange for participating in the insurance plans administered by Defendant.

191.    Implicit in the parties' agreement was that Defendant would provide Plaintiff and members of the Class with prompt and adequate notice of all unauthorized access and/or theft of their Private Information.

192.    Plaintiff and the members of the Class (or their third-party agents) would not have entrusted their Private Information to Defendant in the absence of such an agreement with Defendant.

193.    Defendant materially breached the contracts it had entered with Plaintiff and members of the Class by failing to safeguard such information and failing to notify them promptly of the intrusion into its computer systems that compromised such information. Defendant also breached the implied contracts with Plaintiff and members of the Class by:

     a.    Failing to properly safeguard and protect Plaintiff' and members of the Class's Private Information;

     b.    Failing to comply with industry standards as well as legal obligations that are necessarily incorporated into the parties' agreement; and

> c.   Failing to ensure the confidentiality and integrity of electronic Private Information that Defendant created, received, maintained, and transmitted.

194.   The damages sustained by Plaintiff and members of the Class as described above were the direct and proximate result of Defendant's material breaches of its agreement(s).

195.   Plaintiff and members of the Class have performed under the relevant agreements, or such performance was waived by the conduct of Defendant.

196.   The covenant of good faith and fair dealing is an element of every contract. All such contracts impose upon each party a duty of good faith and fair dealing. The parties must act with honesty in fact in the conduct or transactions concerned. Good faith and fair dealing, in connection with executing contracts and discharging performance and other duties according to their terms, means preserving the spirit—not merely the letter—of the bargain. Put differently, the parties to a contract are mutually obligated to comply with the substance of their contract in addition to its form.

197.   Subterfuge and evasion violate the obligation of good faith in performance even when an actor believes their conduct to be justified. Bad faith may be overt or may consist of inaction, and fair dealing may require more than honesty.

198.   Defendant failed to advise Plaintiff and members of the Class of the Data Breach promptly and sufficiently.

199.   In these and other ways, Defendant violated its duty of good faith and fair dealing.

200.   Plaintiff and members of the Class have sustained damages because of Defendant's breaches of its agreement, including breaches of it through violations of the covenant of good faith and fair dealing.

201.    Plaintiff, on behalf of themselves and the Class, seeks compensatory damages for breach of implied contract, which includes the costs of future monitoring of their credit history for identity theft and fraud, plus prejudgment interest, and costs.

### FOURTH CLAIM FOR RELIEF
**Unjust Enrichment**
**(On Behalf of Plaintiff and the Class)**

202.    Plaintiff incorporates all previous paragraphs as if fully set forth herein.

203.    This claim is plead in the alternative to the breach of implied contractual duty claim.

204.    Plaintiff and members of the Class conferred a benefit upon Defendant in the form of participating in the insurance plans it administers. Defendant therefore benefited from the receipt of Plaintiff's and the Class's Private Information. Defendant appreciated or had knowledge of the benefits conferred upon itself by Plaintiff and members of the Class.

205.    Under principals of equity and good conscience, Defendant should not be permitted to retain the full value of Plaintiff's and the proposed Class's Private Information because Defendant failed to adequately protect their Private Information. Plaintiff and the proposed Class (or their third-party agents) would not have provided their Private Information had they known Defendant would not adequately protect their Private Information.

206.    Defendant should be compelled to disgorge into a common fund to benefit Plaintiff and members of the Class all unlawful or inequitable proceeds received by it as a result of the conduct and Data Breach alleged here.

### FIFTH CLAIM FOR RELIEF
**Invasion of Privacy**
**(On Behalf of Plaintiff and the Class)**

207.    Plaintiff incorporates all previous paragraphs as if fully set forth herein.

208.    Plaintiff and the Class had a legitimate expectation of privacy regarding their highly sensitive and confidential Private Information and were accordingly entitled to the protection of this information against disclosure to unauthorized third parties.

209.    Defendant owed a duty to the claimants participating in the insurance plans it administers, including Plaintiff and the Class, to keep this information confidential.

210.    The unauthorized acquisition (*i.e.*, theft) by a third party of Plaintiff's and Class Members' Private Information is highly offensive to a reasonable person.

211.    The intrusion was into a place or thing which was private and entitled to be private. Plaintiff and the Class (or their third-party agents) disclosed their sensitive and confidential information to Defendant as part of participating in the insurance plans Defendant administers, but they did so privately, with the intention that their information would be kept confidential and protected from unauthorized disclosure. Plaintiff and the Class were reasonable in their belief that such information would be kept private and would not be disclosed without their authorization.

212.    The Data Breach constitutes an intentional interference with Plaintiff's and the Class's interest in solitude or seclusion, either as to their person or as to their private affairs or concerns, of a kind that would be highly offensive to a reasonable person.

213.    Defendant acted with a knowing state of mind when it permitted the Data Breach because it knew its information security practices were inadequate.

214.    Defendant acted with a knowing state of mind when it failed to notify Plaintiff and the Class in a timely fashion about the Data Breach, thereby materially impairing their mitigation efforts.

215.    Acting with knowledge, Defendant had notice and knew that its inadequate cybersecurity practices would cause injury to Plaintiff and the Class.

216.    As a proximate result of Defendant's acts and omissions, the Private Information of Plaintiff and the Class were stolen by a third party and is now available for disclosure and redisclosure without authorization, causing Plaintiff and the Class to suffer damages.

217.    Unless and until enjoined and restrained by order of this Court, Defendant's wrongful conduct will continue to cause great and irreparable injury to Plaintiff and the Class because their Private Information is still maintained by Defendant with its inadequate cybersecurity system and policies.

218.    Plaintiff and the Class have no adequate remedy at law for the injuries relating to Defendant's continued possession of their sensitive and confidential records. A judgment for monetary damages will not end Defendant's inability to safeguard the Private Information of Plaintiff and the Class.

219.    In addition to injunctive relief, Plaintiff, on behalf of himself and the other members of the Class, also seeks compensatory damages for Defendant's invasion of privacy, which includes the value of the privacy interest invaded by Defendant, the costs of future monitoring of their credit history for identity theft and fraud, plus prejudgment interest and costs.

## PRAYER FOR RELIEF

Plaintiff and members of the Class demand a jury trial on all claims so triable and request that the Court enter an order:

A.    Certifying this case as a class action on behalf of Plaintiff and the proposed Class, appointing Plaintiff as class representatives, and appointing their counsel to represent the Class;

B.    Awarding declaratory and other equitable relief as is necessary to protect the interests of Plaintiff and the Class;

C.   Awarding injunctive relief as is necessary to protect the interests of Plaintiff and the Class;

D.   Enjoining Defendant from further deceptive practices and making untrue statements about the Data Breach and the stolen Private Information;

E.   Awarding Plaintiff and the Class damages that include applicable compensatory, exemplary, punitive damages, and statutory damages, as allowed by law;

F.   Awarding restitution and damages to Plaintiff and the Class in an amount to be determined at trial;

G.   Awarding attorneys' fees and costs, as allowed by law;

H.   Awarding prejudgment and post-judgment interest, as provided by law;

I.   Granting Plaintiff and the Class leave to amend this complaint to conform to the evidence produced at trial; and

J.   Granting such other or further relief as may be appropriate under the circumstances.

## JURY DEMAND

Plaintiff hereby demand that this matter be tried before a jury.

Date: December 31, 2025                    Respectfully Submitted,


                                           /s/ Anthony I. Paronich
                                           Anthony I. Paronich
                                           Paronich Law, P.C.
                                           350 Lincoln Street, Suite 2400
                                           Hingham, MA 02043
                                           Tel: (617) 485-0018
                                           anthony@paronichlaw.com

                                           Raina C. Borrelli*

raina@straussborrelli.com
**STRAUSS BORRELLI PLLC**
One Magnificent Mile
980 N. Michigan Avenue, Suite 1610
Chicago, Illinois 60611
(872) 263-1100
(872) 263-1109 (facsimile)

*\*Pro Hac Vice Forthcoming*

*Attorneys for Plaintiff and Proposed Class*